# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAWANJOT SINGH,<br><br>      Petitioner,<br><br>   v.<br><br>MINGA WOFFORD, et al.,<br><br>      Respondents. | Case No. 1:26-cv-00161-JLT-EPG-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS, DENY MOTION FOR PRELIMINARY INJUNCTION AS MOOT, DENY RESPONDENTS' REQUEST FOR EXTENSION OF TIME, AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER<br><br>(ECF Nos. 1, 2, 11) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons stated herein, the undersigned recommends granting the petition for writ of habeas corpus on Count Two, denying Respondents' request for extension of time, and ordering Petitioner's immediate release.

## I.

## BACKGROUND

Petitioner was born in India and entered the United States on June 6, 2024. He entered the United States without inspection and was briefly detained by the Department of Homeland Security ("DHS"). Shortly thereafter, DHS released Petitioner on an order of release on recognizance. As a condition of his release, Petitioner was placed on the Alternatives to Detention ("ATD") monitoring program and was required to regularly check in with U.S.

Immigration and Customs Enforcement ("ICE"). (ECF No. 1 at 5.) On July 17, 2024, DHS served Petitioner with a Notice to Appear ("NTA"), alleging that he was "an alien present in the United States who has not been admitted or paroled" and charging him with removability pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (ECF No. 1-2.) On July 25, 2024, Petitioner was paroled pursuant to 8 U.S.C. § 1182(d)(5)(A), and the parole authorization was valid for one year. (ECF No. 1-3.)

Following his release from detention, Petitioner timely filed a Form I-589, Application for Asylum, with the immigration court. Petitioner subsequently obtained gainful employment and fully complied with all conditions of his order of release, including ATD monitoring and ICE check-ins. Petitioner has no criminal history. ICE detained Petitioner on November 22, 2025 from his home without prior notice and despite the absence of any alleged violation. (ECF No. 1 at 5.)

On January 10, 2026, Petitioner filed a petition for writ of habeas corpus and motion for temporary restraining order ("TRO"), challenging his detention on substantive and procedural due process grounds and as violative of the Immigration and Nationality Act ("INA"). (ECF Nos. 1, 2.) On January 1, 2026, the Court denied the motion for TRO as untimely but converted it to a motion for preliminary injunction and referred the matter to the undersigned. (ECF No. 5.) On January 27, 2026, Respondents filed an opposition to the motion for preliminary injunction. (ECF No. 11.) That same day, Petitioner filed a reply. (ECF No. 12.)

**II.**

**DISCUSSION**

**A. Consolidation of Motion for Preliminary Injunction with the Merits and Request for Extension of Time to File Response to Petition**

In the order setting the briefing schedule, the undersigned indicated that "[g]iven that the petition and the motion for preliminary injunction raise the same claims and seek identical relief, and for purposes of judicial efficiency, it appears to the Court that issuing findings and recommendations on the merits pursuant to Rule 65(a)(2), which provides that 'the court may advance the trial on the merits and consolidate it with the hearing' on a motion for preliminary

injunction, is appropriate." (ECF No. 7 at 1 (quoting Fed. R. Civ. P. 65(a)(2)).) Accordingly, the Court ordered Respondents to file a response to the petition and the motion for preliminary injunction. (Id. at 2.) The Court also ordered Respondents to state whether there are actual factual or legal issues in this case that render it distinguishable from the Court's previous decisions granting habeas relief. (Id. at 1–2.)

In the opposition to the motion for preliminary injunction, Respondents state:

> If . . . the Court grants . . . the preliminary injunction, Respondents request that the Court set a briefing schedule, with deadline for filing Respondents' opposition to the habeas petition and any relevant documents set 180 days from the date of the Court's order. The purpose of this potentially lengthy extension request is to allow Respondents time to present informed briefing in a rapidly evolving area of the law, where appeals are currently pending in the Ninth Circuit that are likely to have precedential effect on current immigration habeas litigation, including this case. In the event the preliminary injunction has issued, petitioner will not be prejudiced by this lengthy briefing schedule.

(ECF No. 11 at 1–2.)

Petitioner argues that such a request should be denied because "Rule 65(a)(2) expressly permits the Court to advance and consolidate the merits with the preliminary injunction determination," the "Court has already indicated that consolidation is appropriate here for purposes of judicial efficiency, and Respondents' concession" that there are no legal arguments or material factual differences to distinguish this case from previous orders issued by the Court "confirms there is no need for prolonged merits briefing," "speculative future appellate developments do not justify delaying adjudication of a habeas petition challenging unlawful detention," and "continued delay undermines the purpose of habeas relief and the Court's obligation under 28 U.S.C. § 2243 to dispose of the matter 'as law and justice require.'" (ECF No. 12 at 2–3.)

Respondents do not identify which Ninth Circuit appeals will impact the instant matter. The Court notes that the appeal of Rodriguez Vazquez v. Bostock, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025), is currently set for oral argument in March 2026. Notice, Rodriguez Vazquez v. Bostock, No. 25-6842 (9th Cir. Dec. 22, 2025), ECF No. 18. Rodriguez Vazquez concerned a noncitizen who entered the United States without inspection, lived in the country for

fifteen years, was apprehended by ICE, and raised a statutory claim that he is detained under § 1226(a) and not subject to mandatory detention under § 1225(b)(2). The Court is doubtful that the Ninth Circuit decision in Rodriguez Vazquez will have any bearing on the due process claim raised in the present case.

Given that the petition and the motion for preliminary injunction raise the same claims and seek identical relief, and for purposes of judicial efficiency, the undersigned recommends "advanc[ing] the trial on the merits and consolidat[ing] it with" the motion for preliminary injunction. Fed. R. Civ. P. 65(a)(2). See Dzhabrailov v. Decker, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously). See also 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require."). Further, the undersigned recommends denying Respondents' request for an extension of time to file a response to the petition.

**B. Procedural Due Process**

In Count Two, Petitioner asserts a violation of his procedural due process rights. (ECF No. 1 at 9–10.) "We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

1. Liberty Interest

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in

his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025).

"Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." Rocha Chavarria v. Chestnut, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). See Omer G. G. v.

Kaiser, No. 1:25-CV-01471-KES-SAB (HC), 2025 WL 3254999, at *6 (E.D. Cal. Nov. 22, 2025) ("Under the circumstances of this case, where immigration officials provided to petitioner a document stating that he was released 'pending a final decision' in his removal proceedings, petitioner had not even had his initial hearing in those removal proceedings, and petitioner was granted a five-year work authorization permit during his year on parole status, petitioner reasonably maintained a liberty interest in his release pending a final removal decision in his immigration case."); Maklad v. Murray, No. 1:25-CV-00946 JLT SAB, 2025 WL 2299376, at *8 (E.D. Cal. Aug. 8, 2025) (finding petitioner has a protected liberty interest after having been released on parole for nearly three years).

"Even assuming Respondents are correct that § 1225(b) is the applicable detention authority for all 'applicants for admission,' Respondents fail to contend with the liberty interest created by the fact that the Petitioner in this case was released on recognizance[.]" Garcia v. Chestnut, No. 1:25-cv-01907-JLT-CDB, 2025 WL 3771348, at *9 (E.D. Cal. Dec. 31, 2025). Accordingly, the undersigned recommends finding that Petitioner has a protected liberty interest in remaining out of immigration custody.

2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *5 (E.D. Cal. Mar. 19, 2025)). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) (alteration in original) (quoting Zadvydas, 533 U.S. at 690). Petitioner's release on recognizance necessarily required a determination that he posed neither a flight risk nor a danger. Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *4 (E.D. Cal. Dec. 9, 2025) (citing 8 C.F.R. § 212.5(b); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025)); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). Respondents do not argue that Petitioner is now a flight risk or a danger to the community. "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S. v. Chestnut, No. 1:25-cv-01427-KES-SKO (HC), 2025 WL 3167826, at *10 (E.D. Cal. Nov. 12, 2025) (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of

providing a custody hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

On balance, the Mathews factors show that Petitioner is entitled to notice and a bond hearing and "[t]hat hearing should have occurred before petitioner was re-detained." Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025).

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

Carmen G.C., 2025 WL 3521304, at *7.

At such a pre-deprivation hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-detention is warranted. See Carmen G.C., 2025 WL 3521304, at *7 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that

///

8

initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

Based on the foregoing, Petitioner has demonstrated that he has a strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be meaningfully reduced by requiring notice and a pre-detention hearing before a neutral decisionmaker, and that the governmental burden in providing such procedure is quite minimal. Accordingly, the undersigned recommends granting the petition on Count Two.[1]

**C. Appropriate Relief**

Courts in this district have taken differing approaches to the relief granted to petitioners who have been released, subsequently re-detained, and denied bond hearings in violation of due process. In some cases, the immediate release of the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria, 2025 WL 3533606 (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera v. Albarran, No. 1:25-cv-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025) (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and

///

---

[1] In light of this conclusion, the Court declines to address Petitioner's substantive due process and statutory claims.

was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, Respondents do not allege, and there is nothing in the record before this Court, that Petitioner violated his conditions of release. Respondents do not contend that Petitioner is a danger or flight risk. Accordingly, the Court finds that Petitioner's immediate release is the appropriate remedy.

### III.

### RECOMMENDATION

Based on the foregoing, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on Count Two.

2. Petitioner's motion for preliminary injunction (ECF No. 2) be DENIED as moot.

3. Respondents' request for extension of time (ECF No. 11) be DENIED.

4. Respondents be directed to immediately release Petitioner from custody with the same conditions he was subject to immediately prior to his re-detention on November 22, 2025.

5. Respondents be enjoined and restrained from re-detaining Petitioner absent compliance with constitutional protections, which include at a minimum, predeprivation notice of at least seven days before a predeprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that he is likely to flee or pose a danger to the community if not arrested.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 29, 2026**          /s/ <span>*Erica P. Grosjean*</span>

UNITED STATES MAGISTRATE JUDGE